# EXHIBIT 8

```
           IN THE UNITED STATES DISTRICT COURT
          FOR THE DISTRICT OF NORTH CAROLINA
                   ASHEVILLE DIVISION

RICHARD CAMPBELL,                  )
                                   )
          Plaintiff,               )
                                   )  Case No.
vs.                                )  1:17-cv-00129-MR-DLH
                                   )
SHIRLEY TETER and SINCLAIR         )
COMMUNICATIONS, INC.,              )
                                   )
          Defendants.              )
_____/
                                   )
SHIRLEY TETER,                     )
                                   )
          Plaintiff,               )
                                   )  Case No.
vs.                                )  1:17-cv-00256-MR-DLH
                                   )
PROJECT VERITAS ACTION FUND,       )
et al.,                            )
                                   )
          Defendants.              )
_____/
```

ATTORNEYS' EYES ONLY

Rule 30(b)(6) VIDEOTAPE DEPOSITION OF

PROJECT VERITAS AND PROJECT VERITAS ACTION FUND

By and Through its Designee

ROBERT JOEL HALDERMAN

(Taken by Defendant/Counter Plaintiff Shirley Teter)

Winston-Salem, North Carolina

Tuesday, November 20th, 2018

Reported by: Judy F. Reins, RMR, CRR

```
 1  BY MR. SASSER:
 2      Q.   I've heard you described as his journalism
 3  guru.  Is that fair?
 4      A.   I -- I would not say -- I would not say
 5  that.  I am his colleague and I work for him.
 6      Q.   I also heard you described as the ethics
 7  guru at Veritas.  Is that accurate?
 8           MR. DEAN:  Objection, outside the scope.
 9           THE WITNESS:  I -- I -- again, I think that
10       my job -- my job is the executive producer.  My
11       job -- I have, as I said, a number of years
12       experience in the journalism business.  I think I
13       have a strong sense of -- of what journalism is
14       and needs to be in this country in order to have
15       a free and open democracy, and I care very deeply
16       about it.
17  BY MR. SASSER:
18      Q.   When it comes to content of Veritas's work,
19  does that primarily come down to Mr. O'Keefe and you
20  for the final decision makers?
21           MR. DEAN:  Object, beyond the scope.
22           THE WITNESS:  Well, again, I think the --
23       the most wonderful thing about the news business
24       is that every story evolves in a different way,
25       and every event tends to be kind of unique in its
```

```
 1  BY MR. SASSER:
 2      Q.  Actually, Joel Pollak said that, didn't he?
 3          MR. DEAN:  Object to the form.
 4          THE WITNESS:  I don't know what Joel Pollak
 5      said.
 6  BY MR. SASSER:
 7      Q.  Your story about Ms. Teter in Rigging the
 8  Election, part 1, did not mention Shirley Teter to
 9  Joel Pollak, mention that to Christian Hartsock and
10  James O'Keefe, did it?
11      A.  I guess not.
12      Q.  Okay.  You mentioned earlier that you were
13  terminated by CBS.  Why was that?
14      A.  I was arrested.
15      Q.  And what were you arrested for?
16      A.  I was arrested for grand theft, a felony in
17  New York State.
18      Q.  And what were the circumstances?
19      A.  It was a very complicated story about an
20  attempt to take money, grand theft from Mr. David
21  Letterman.
22      Q.  And you, in fact, did that?
23      A.  In fact, I pled guilty and I went to jail,
24  served a six-month sentence, four months in Rikers
25  Island and did a thousand hours of community service.
```

```
 1            MR. DEAN:  Objection, beyond the scope.
 2            THE WITNESS:  No.
 3   BY MR. SASSER:
 4       Q.   What investigation did you conduct to find
 5   out whether Mr. Foval was referring to Ms. Teter being
 6   one of our activists?
 7            MR. DEAN:  Objection.
 8            THE WITNESS:  I did not.
 9   BY MR. SASSER:
10       Q.   Do you know whether anybody else at Project
11   Veritas did?
12            MR. DEAN:  Objection, same objection.
13            THE WITNESS:  I do not.
14            MR. SASSER:  That's all the questions I
15       have.
16            THE VIDEOGRAPHER:  Anyone else?
17            MR. DEAN:  Yes.  And before we go off the
18       record, I want to make clear that we're
19       designating -- I don't know if I made clear that
20       we're designating all of Mr. Halderman's
21       testimony as Attorneys' Eyes Only, subject to
22       making more specific designations pursuant to the
23       protective order.
24                        EXAMINATION
25   BY MR. DEAN:
```