# EXHIBIT 12



September 7, 2017

Mr. John Sasser
Ellis & Winters
P.O. Box 33550
Raleigh, North Carolina 27636

Mr. Ralph Streza
Critchfield, Chitchfield & Johnson
4996 Foote Road
Medina, Ohio 44256

Re:     Shirley Teter

        This letter is in response to your correspondence of August 20 and 21, 2017, in which you notify Project Veritas Action Fund ("PVA") that your client, Shirley Teter, will commence litigation based on the video, "Rigging the Election—Video 1." Through such threatened litigation, you intend to stop PVA from reporting about issues of public import surrounding the 2016 presidential election. Pursuant to Federal Rule of Civil Procedure 11 and Rule 3.1 of the Ohio Rules of Professional Conduct, I write to give you notice that there is no basis in fact or law for your claims, rendering them frivolous and subject to sanctions.

        For over 80 years, the Supreme Court has held, without deviation, that debate on public issues should be robust and uninhibited. *New York Times Co. v. Sullivan*, 376 U.S. 254, 270 (1964) (citing *Terminiello v. Chicago*, 337 U.S. 1, 4 (1949); *De Jonge v. Oregon*, 299 U.S. 353, 365 (1937)).  Litigation that entraps those engaged in public commentary and debate about issues and political figures finds no recognition under the First Amendment.

### "Rigging the Election"

        On October 17, 2016, PVA released "Rigging the Election—Video 1"—part of an undercover exposé into the inner workings of the 2016 presidential election.  Available online at: https://www.projectveritasaction.com/2016/10/17/rigging-the-election-video-i-clinton-campaign-and-dnc-incite-violence-at-trump-rallies/. In this video, PVA repeated common news headlines concerning Shirley Teter and allegations that she was assaulted at political rallies in North Carolina. PVA then captured Scott Foval, of Americans United for Change, indicating that Teter "was one of our activists."  "Rigging the Election—Video 1" at 12:51; 13:09 The video later includes Mr. Foval discussing the fact that his operation had mentally ill and homeless people that it paid to do "crazy stuff." *Id.* at 13:50. At no point in the video does PVA itself claim that Teter was paid to

"birddog," was homeless, or mentally ill. It simply reports the information conveyed by Mr. Foval. Similarly, PVA released a second video in the series and opined about developments in that coverage by the press. *See* "Shirley Teter Changes Her Story After Release of Project Veritas Action Videos" available online at: https://www.youtube.com/watch?v=QNR9FUN98Qg.

### There is No Basis for Any Claims Sounding in Defamation or False Light

Shirley Teter voluntarily thrust herself into the most public controversy of 2016— a controversial and charged presidential election. If "an individual voluntarily injects himself or is drawn into a particular public controversy [, he] thereby becomes a public figure for a limited range of issues." *Gertz v. Robert Welch, Inc.,* 418 U.S. 323, 351 (1974). By voluntarily attending a controversial campaign rally featuring a wide array of media coverage, Ms. Teter became a public figure. Consistent with the First Amendment, it is expected that media and press operations will provide public commentary about these developments.

As stated recently by the United States District Court for the Southern District of New York in *Palin v. New York Times Co.*, "legal redress by a public figure must be limited to those cases where the public figure has a plausible factual basis for complaining that the mistake was made maliciously, that is, with knowledge it was false or with reckless disregard of its falsity." 17-cv-4853 (S.D.N.Y. Aug. 29, 2017). Here, there has been no mistake made by PVA, nor was commentary made with knowledge that it was false, or with reckless disregard of its falsity.

In "Rigging the Election—Video 1" and its subsequent coverage, PVA provided news reporting about a campaign rally Ms. Teter voluntarily involved herself with in North Carolina. It relayed the public headlines that other media outlets ran concerning the rally as well as its own undercover recording obtained of Mr. Foval indicating that Ms. Teter was one of his "activists." PVA also reported on the actions of Mr. Foval hiring homeless or mentally ill people—a discussion wholly separate from that of Ms. Teter.

Veritas performed its important function of reporting to the public about items of news worthiness during the 2016 presidential election. This sort of reporting and commentary is protected as a sacrosanct right for all, including the press. While Ms. Teter may be unhappy about reporting focusing on her role and her activities associated with this public event, there is no legal or factual basis to support a viable claim against PVA for defamation or otherwise. PVA's reporting about political controversies and a historic American election goes to the core of First Amendment protections. *See, e.g., Stow v. Coville*, 96 Ohio App.3d 70, 74 (Ohio.App. 1994) ("To allow an action for defamation based on such comments would be to censure political speech. . . ."); *Grau v. Kleinschmidt*, 509 N.E.2d 399, 96 (Ohio 1987) (Douglas, J., concurring) ("Can there really be any question that such [political] reporting is protected by the First Amendment as a matter of law?"); *Dale v. Ohio Civil Service Employees Ass'n*, 567 N.E.2d 253 (Ohio 1991); *Wampler v. Higgins*, 752 N.E.2d 962 (Ohio 2001).

Whether under Rule 11 of the Federal Rules of Civil Procedure or Rule 3.1 of the Ohio Rules of Professional Conduct, there is no basis in law or fact for a claim sounding in defamation or false light against Project Veritas Action Fund.  Should Ms. Teter and your firms pursue litigation in this matter, PVA intends to move expeditiously for sanctions, including an award of attorneys' fees and costs.

Sincerely,

Benjamin Barr
Lead Counsel
Project Veritas Action Fund