THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
ASHEVILLE DIVISION
CIVIL CASE NO. 1:17-cv-00256-MR

SHIRELY TETER,            )
                          )
         Plaintiff,       )
                          )
     vs.                  )        **O R D E R**
                          )
PROJECT VERITAS ACTION FUND, )
et al.,                   )
                          )
         Defendants.      )
_____)

**THIS MATTER** is before the Court on the Defendants' oral motion for judgment as a matter of law pursuant to Rule 50(a) of the Federal Rules of Civil Procedure.

## I.    PROCEDURAL BACKGROUND

In this action, the Plaintiff Shirley Teter asserts a claim for defamation based on videos published by the Defendants. The Plaintiff alleges that these videos falsely implicate her involvement in coordinated disruptions and violence carried out in conjunction with the 2016 presidential election.

The matter proceeded to a jury trial on May 20, 2019. Upon conclusion of the Plaintiff's evidence, the Defendants moved for the entry of judgment as a matter of law on the Plaintiff's defamation claim. The Court orally

granted the Defendants' motion on May 22, 2019, advising that a written order would follow. [Minute Entry dated May 22, 2019].

## II. STANDARD OF REVIEW

Rule 50(a) of the Federal Rules of Civil Procedure provides, in pertinent part, as follows:

> If a party has been fully heard on an issue during a jury trial and the court finds that a reasonable jury would not have a legally sufficient evidentiary basis to find for the party on that issue, the court may:
>
> (A) resolve the issue against the party; and
>
> (B) grant a motion for judgment as a matter of law against the party on a claim or defense that, under the controlling law, can be maintained or defeated only with a favorable finding on that issue.

Fed. R. Civ. P. 50(a)(1). "Rule 50(a) allows a party to challenge the sufficiency of the evidence before a case is submitted to the jury[.]" Belk, Inc. v. Meyer Corp., U.S., 679 F.3d 146, 154 (4th Cir. 2012). A Rule 50(a) motion "tests the legal sufficiency of a claim, that is, assesses whether the claim should succeed or fail because the evidence developed at trial was insufficient as a matter of law to sustain the claim." Id. at 155. In reviewing a motion for judgment as a matter of law, the Court must view the evidence in the light most favorable to the non-moving party. Dennis v. Columbia Colleton Med. Ctr., Inc., 290 F.3d 639, 645 (4th Cir. 2002).

## III. DISCUSSION

### A. Plaintiff's Defamation Claim Fails as a Matter of Law

The Plaintiff's claim rests upon her allegation that two statements contained in the videos produced by the Defendants defamed her: (1) a statement suggesting that the Plaintiff was a paid political operative sent to political rallies to provoke violence and (2) a statement suggesting that the Plaintiff was mentally ill and homeless. The Court previously concluded that such statements are reasonably susceptible of only one meaning and would thus constitute libel *per se*.

The Court turns to the first allegedly defamatory statement, i.e., that the Plaintiff was a paid political operative sent to political rallies to provoke violence. The two videos at issue feature a hidden camera interview with a political operative named Scott Foval. In Video I, Foval states the following regarding the Plaintiff:

> She was one of our activists. Who had trained up to birddog. So the term birddogging, you put people in the line, at the front which means that they have to get there at six o'clock in the morning so that they're getting in front of the rally, so that when Trump comes down the rope line, they're the ones asking him the question in front of the reporter, because they're pre-placed there. To funnel that kind of operation, you have to start back with people two weeks ahead of time and train them how to ask questions. You have to train them to birddog.

3

[Doc. 1, Ex. 1 at 12:50-13:48].[1] In this statement, Foval clearly claims that the Plaintiff was a political operative for one or more organizations for which Foval was working and that she had been sent to the September 12, 2016 rally in Asheville in order to "birddog," that is, to ask questions of then-candidate Trump in front of reporters.

There is nothing inherently defamatory about accusing someone of going to a political rally on an organization's behalf in order to question a political candidate. What makes this statement allegedly defamatory in the Plaintiff's view is that the videos suggest that the Plaintiff was a *paid* operative who was sent to the political rally in order *to provoke violence*. Foval, however, never stated that the Plaintiff was paid to attend the rally, nor could the same be reasonably inferred from his statement. Further, Foval never stated, explicitly or implicitly, that the Plaintiff was sent to this political rally to provoke violence. Rather, he stated that the Plaintiff had been trained to "birddog," that is, to ask questions of the candidate in order to create an awkward or potentially damaging soundbite that could be used by Foval's organizations. While Foval references other groups (such as union workers, mentally ill, and homeless people), being paid "to do shit" and

---

[1] The substance of this statement is repeated in Video II [Doc. 1, Ex. 3 at 00:17-00:58].

"to do some crazy stuff," there is nothing in the Defendants' videos to connect the Plaintiff with such activity. To the extent that Foval makes statements in the Defendants' videos regarding the payment of individuals to appear at political rallies to provoke violence, such statements are not connected to the Plaintiff, and therefore fail to constitute libel *per se.*

The second defamatory statement claimed by the Plaintiff – that the videos suggest that the Plaintiff is homeless and mentally ill – fails for similar reasons. Foval never states that the Plaintiff is homeless or mentally ill. Foval simply states that in the past he has paid "homeless guys," people with mental illness, and union members to appear at political rallies on behalf of his organizations "to do some crazy stuff." Nothing in Foval's statement reasonably implies that the Plaintiff is considered part of any of these groups.[2] Even if Foval's statements regarding mentally ill persons could be connected to the Plaintiff, the Plaintiff herself admitted at trial that she has mental illnesses for which she takes medication. As such, any statement made by Foval that could be construed as relating to the Plaintiff could not be defamatory. Chapin v. Greve, 787 F. Supp. 557, 563 (E.D. Va. 1992) ("a defamatory statement must be false to be actionable, truth being an absolute

---

[2] Plaintiff does not allege that she was defamed by the videos implying she is a union member.

defense to a libel action"), aff'd sub nom., Chapin v. Knight-Ridder, Inc., 993 F.2d 1087 (4th Cir. 1993).

For these reasons, the Court concludes that the evidence adduced at trial is insufficient to sustain a claim of defamation as a matter of law.

B. **Plaintiff Failed to Introduce Clear and Convincing Evidence of Actual Malice.**

Even if the Plaintiff had shown that the Defendants' statements were defamatory, the Plaintiff failed to introduce clear and convincing evidence of actual malice sufficient to warrant submitting this case to the jury.

Prior to the commencement of trial, the Court concluded as a matter of law that the Plaintiff was a limited purpose public figure.[3] As such, the Plaintiff was required to establish actual malice on the part of the Defendants as a substantive part of her claim. Hatfill v. The New York Times Co., 532 F.3d 312, 315 (4th Cir. 2008).[4]

---

[3] The Court's pretrial conclusion of the Plaintiff's status was based on the forecasts of evidence presented by the parties on the motion for summary judgment and on the nearly 1,700 pages of deposition transcripts presented by the parties setting forth the portions of such depositions the parties proposed to present to the jury at trial. On this point the evidence at trial did not materially vary from such pre-filed forecasts and evidence. In short, once the Plaintiff had the attention of the media because of a physical confrontation between her and Richard Campbell, the Plaintiff used the platform that was afforded her to make statements on an issue of great public importance, i.e., whether a particular presidential candidate was a danger and whether his supporters were "deplorable."

[4] Even if the Plaintiff were not a public figure, she would still have to prove actual malice before receiving any presumed or punitive damages – the only types of damages that she

6

"[W]here the First Amendment mandates a 'clear and convincing' standard, the trial judge in disposing of a directed verdict motion should consider whether a reasonable factfinder could conclude, for example, that the plaintiff had shown actual malice with convincing clarity." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986). Where a plaintiff fails to introduce sufficient evidence that the defendant acted with actual malice, a directed verdict is proper. See Horne v. WTVR, LLC, 893 F.3d 201, 211 (4th Cir. 2018), cert. denied, 139 S. Ct. 823 (2019).

"Under the actual malice standard, a plaintiff must prove that a defendant had a particular, subjective state of mind at the time the statements were made." Id. Specifically, the plaintiff must show that the defendant made the statements knowing that they were false or with reckless disregard for their falsity. Hatfill, 532 F3d at 317. In other words, the plaintiff must be able to show that the defendant "*in fact* entertained serious doubts as to the truth of his publication." Carr v. Forbes, Inc., 259 F.3d 273, 283 (4th Cir. 2001) (citation omitted) (emphasis in original).

---

sought on her defamation *per se* claim – because it is undisputed that the videos at issue addressed a matter of public concern. See Reuber v. Food Chemical News, Inc., 925 F.2d 703, 708 (4th Cir. 1991).

In opposing the Defendants' Rule 50 motion, the Plaintiff cites to five pieces of evidence as proving actual malice. First, the Plaintiff argues that there was evidence that the Defendants had a pre-conceived story, created in advance of an investigation, and that the Defendants then consciously set out to create evidence to conform to that pre-conceived story. In so arguing, the Plaintiff expressly relies on Plaintiff's Exhibit 25, an email containing an exchange of ideas between Christian Hartsock and Joe Halderman of Project Veritas regarding the so-called "draft number three" of Video I, which was a sketch of ideas of how to edit and assemble the raw video they had accumulated for this project. The evidence shows, however, that the events actually occurred in the opposite order from what the Plaintiff asserts. The final interview of Scott Foval occurred on September 15, 2016, while the email discussion between Mr. Hartsock and Mr. Halderman regarding what portions of Foval's interview should be included in that video occurred on October 14, 2016. Thus, the Plaintiff's contention that the Defendants concocted a storyline (Video I) and then consciously set out to create the "evidence" (Foval's statements) to conform to that storyline is simply unsupported by the Plaintiff's own evidence.

Next, the Plaintiff argues that actual malice is evidenced by the fact that while interviewing Mr. Foval, Mr. Hartsock never asked him the name of

the woman to whom he was referring when he stated that "*she* was one of our activists." As the Supreme Court has recognized, a mere "failure to investigate will not alone support a finding of actual malice." <u>Harte-Hanks Commc'ns, Inc. v. Connaughton</u>, 491 U.S. 657, 692 (1989). While Mr. Hartsock could have asked more questions or even better questions, the Court cannot police the quality of a journalist's interviewing skills. To hold the Defendants liable, the First Amendment requires a showing that the Defendants published the statements about the Plaintiff knowing that such statements were false or with a reckless disregard for their falsity. Simply asserting, with 20/20 hindsight, that Mr. Hartsock could have clarified Mr. Foval's statements by asking one or two more questions falls far short of being probative of such reckless disregard. Similarly, the Plaintiff contends that actual malice is shown by the fact that Mr. Hartsock did not contact the Plaintiff to verify Foval's statements or to get her side of the story. This, however, is probative of nothing. In light of all the publicity surrounding the underlying confrontation between the Plaintiff and Mr. Campbell, the Plaintiff would reasonably be expected to deny Mr. Foval's assertions regardless of their truth. The Plaintiff further contends that Mr. Hartsock failed to investigate certain conflicts in Mr. Foval's statements, such as when he stated that the Plaintiff "was one of ours" and had been "trained to birddog"

but also stated that "we didn't know who she [Teter] was ahead of [the Asheville rally]." This, however, was not a conflict, because it was clear that Mr. Foval was talking about the same person in those two comments. The Plaintiff's evidence regarding the inadequacy of the Defendants' investigation falls far short of the actual malice required for this case to be submitted to the jury.[5]

Next, the Plaintiff argues that Mr. Foval was inherently unreliable as a source and, therefore, the Defendants' reliance upon his statements without further investigation could support a finding of actual malice. In arguing that Mr. Foval was inherently unreliable, the Plaintiff relies on the fact that Mr. Hartsock's "relationship" with Mr. Foval consisted of various meetings where Mr. Hartsock was surreptitiously recording Mr. Foval and presenting a false scenario regarding the reason that he was talking with Mr. Foval. The Plaintiff argues: "Given that Mr. Hartsock knew that he was presenting a false scenario, it seems unreasonable for Mr. Hartsock to assume that Mr. Foval was a reliable source without any additional verification." [Doc. 112 at 3]. To the contrary, however, Mr. Hartsock's interviews of Mr. Foval are replete with statements being made against Mr. Foval's own interest. Under the Rules

---

[5] Plaintiff does not assert that excerpts of the Foval interview videos were edited in a deceptive manner.

of Evidence, particularly Rule 804(b)(3), such statements are considered to be of higher reliability, not lower reliability. The Court fails to see how the circumstances under which these interviews were conducted constitutes evidence that the Defendants were on notice that Mr. Foval was being untruthful.

The evidence cited by the Plaintiff as evidence of actual malice constitutes only the thinnest of thin reeds. The law, however, requires that the Court find more than a mere scintilla of evidence to allow this case to proceed to the jury. The Court must determine that a jury could find by clear and convincing evidence that there was actual malice on the part of the Defendants. The very thin reed presented by the Plaintiff is simply insufficient to meet that standard.

In sum, the Plaintiff has failed to present clear and convincing evidence that the Defendants knew that Foval's statements were false or that they had serious doubts regarding the truth of such statements. Accordingly, the Court concludes that the Defendants are entitled to judgment as a matter of law with respect to the Plaintiff's defamation claim.

**IT IS, THEREFORE, ORDERED** that the Defendants' oral motion for judgment as a matter of law pursuant to Fed. R. Civ. P. 50(a) is **GRANTED**, and this case is hereby **DISMISSED**.

**IT IS SO ORDERED.**

Signed: June 7, 2019

Martin Reidinger
United States District Judge