**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
ASHEVILLE DIVISION
CIVIL CASE NO. 1:17-cv-00256-MR**

| | | |
|---|---|---|
| **SHIRLEY TETER,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **vs.** | ) | **MEMORANDUM OF** |
| | ) | **DECISION AND ORDER** |
| **PROJECT VERITAS ACTION** | ) | |
| **FUND, PROJECT VERITAS, and** | ) | |
| **JAMES E. O'KEEFE, III,** | ) | |
| | ) | |
| **Defendants.** | ) | |

**THIS MATTER** is before the Court on the Defendants' Motion to Review Clerk's Order Denying Costs. [Doc. 131].

## I.    BACKGROUND

The present action is one of two actions filed in this Court arising from an incident that occurred between the Plaintiff Shirley Teter ("Plaintiff") and Richard Lamar Campbell outside of a political rally in Asheville, North Carolina, on September 12, 2016. On September 14, 2017, the Plaintiff initiated the present action asserting claims for defamation, libel, slander, and unfair and deceptive trade practices against Defendants Project Veritas Action Fund, Project Veritas, and James E. O'Keefe, III, arising from their publication and dissemination of videos related to the incident between

Campbell and the Plaintiff and of a political operative purportedly commenting thereon. [Doc. 1]. In the companion case, Mr. Campbell asserted claims against the Plaintiff of assault and battery, malicious prosecution, and defamation, and the Plaintiff, in turn, asserted counterclaims for assault and battery, defamation, libel, and slander against Mr. Campbell. [See Civil Case No. 1:17-cv-00129]. The two cases were consolidated for the purposes of conducting discovery. [Doc. 28]. Five of the six attorneys who currently represent or previously represented the Plaintiff in this action also represented the Plaintiff in the companion case against Mr. Campbell.

In the companion case, the Plaintiff and Mr. Campbell entered into a confidential settlement agreement and dismissed their respective claims and counterclaims on January 7, 2019. [See Civil Case No. 1:17-cv-00129]. In the present case, the Court entered an Order granting summary judgment in favor of the Defendants on the Plaintiff's claim for unfair and deceptive trade practices, [Doc. 101], and the parties proceeded to a jury trial on the Plaintiff's remaining claims for defamation, libel and slander. Following the close of evidence, the Court determined that the Defendants were entitled to judgment as a matter of law on the Plaintiff's claims for defamation, libel and slander. [Doc. 120]. Thus, on June 7, 2019, the Court entered a Judgment

dismissing the Plaintiff's action and including a provision that "the Defendants shall recover their costs of the action from the Plaintiff." [Doc. 121].

On July 29, 2019, the Defendants filed a Bill of Costs seeking $23,924.85 from the Plaintiff. [Doc. 123]. The Plaintiff objected to the Bill of Costs arguing, first, that she is unable to pay the Defendants' costs and, in the alternative, that some of the specific costs sought by the Defendants are unrecoverable. [Docs. 124; 126]. On August 16, 2019, the Defendants filed a Revised Bill of Costs seeking $23,143.67 from the Plaintiff. [Doc. 128]. The Plaintiff objected to the Revised Bill of Costs on the same grounds. [Doc. 129]. On February 26, 2021, the Clerk of Court issued an Order denying the Defendants' costs because "the financial circumstances set forth in the Plaintiff's sworn affidavit are sufficient to overcome the presumption in favor of awarding costs to Defendants as the prevailing parties." [Doc. 130 at 2]. On March 5, 2021, the Defendants filed a Motion to Review Clerk's Order Denying Costs, requesting "that either (1) they be awarded all costs reflected in their [Revised] Bill of Costs or (2) the Court conduct a hearing or permit discovery concerning Plaintiff's ability to pay." [Doc. 131 at 2]. On February 25, 2022, the parties appeared before the Court for a hearing on this matter. [See Doc. 147].

## II. STANDARD OF REVIEW

Federal Rule of Civil Procedure 54(d) provides, in pertinent part, that "[u]nless a federal statute, these rules, or a court order provides otherwise, costs—other than attorney's fees—should be allowed to the prevailing party." Fed. R. Civ. P. 54(d)(1). "On motion . . . the court may review the clerk's action" taxing or denying costs. Id. The Court reviews the Clerk's order taxing or denying costs de novo. Mitchell-Tracey v. United General Title Ins. Co., 839 F. Supp. 2d 821, 825 (D. Md. 2012); see also Foxx v. Town of Fletcher, No. 1:07-cv-336, 2009 WL 971680, at *2 (W.D.N.C. Apr. 9, 2009). The grant or denial of an award of costs is a matter within the Court's discretion. Cherry v. Champion Int'l Corp., 186 F.3d 442, 446 (4th Cir. 1999).

## III. DISCUSSION

As a threshold matter, the Defendants argue that the Plaintiff was required to file a motion challenging the Court's Judgment under Rule 59(e) or Rule 60(b) of the Federal Rules of Civil Procedure before objecting to the Bill of Costs and Revised Bill of Costs. [Doc. 132 at 3-4]. This is necessary, they assert, because the Judgment in this case includes in its mandate a provision allowing the Defendants recovery of their costs. [Doc. 121 at 2].

The Supreme Court has explained that, while "federal courts generally have invoked Rule 59(e) . . . to support reconsideration of matters properly

4

encompassed in a decision on the merits," a request for costs under Rule 54(d) of the Federal Rules of Civil Procedure "raises issues wholly collateral to the judgment in the main cause of action, issues to which Rule 59(e) was not intended to apply." Buchanan v. Stanships, Inc., 485 U.S. 265, 267-68, 108 S. Ct. 1130, 99 L.Ed.2d 289 (1988). The Court is further guided by the procedure outlined in Local Civil Rule 54.1, which does not require the filing of a motion for reconsideration before objecting to a bill of costs. See LCvR 54.1(a), (d) (stating that "[a] prevailing party may request the Clerk of Court to tax allowable costs," at which point an adverse party may then "file an objection to the bill of costs with supporting brief within fourteen (14) days after the electronic filing of the bill of costs"). Therefore, the Plaintiff was not required to first challenge the Judgment under Rule 59(e) or Rule 60(b), and the Plaintiff's Objections are properly before the Court.

The central point of the Defendants' argument is that the Plaintiff has failed to demonstrate that she is unable to pay the Defendants' costs. [Doc. 132 at 4-7]. The Fourth Circuit has recognized that "the language of Rule 54(d)(1) gives rise to a presumption that costs are to be awarded to the prevailing party." Ellis v. Grant Thornton LLP, 434 F. App'x. 232, 235 (4th Cir. 2011) (per curiam) (citation and internal quotation marks omitted). "Accordingly, it is incumbent upon the unsuccessful party to show

circumstances sufficient to overcome the presumption favoring an award of costs to the prevailing party." Id. (citing Teague v. Bakker, 35 F.3d 978, 996 (4th Cir. 1994)).

When a court denies an award of costs, it must "articulat[e] some good reason" for doing so. Cherry, 186 F.3d at 446 (citations and internal quotation marks omitted). Essentially, the court must find that "there would be an element of injustice in a presumptive cost award." Id.

The Plaintiff contends that she is unable to pay the costs at issue, and this was the basis for the Clerk's determination to which the Defendants now object. In support of her argument, the Plaintiff has submitted her bank records from January through December of 2019 [Doc. 144] and an Affidavit [Doc. 125], signed by the Plaintiff in August of 2019, detailing her monthly income and expenses. In her Affidavit, the Plaintiff states:

> I have no money to pay for Defendants' litigation costs. *I had* or have *no money to pay my lawyers the costs and expenses they incurred on my behalf in representing me.* My lawyers did not agree to pay the costs and expenses they incurred on my behalf, and they certainly did not agree to pay any award of costs incurred by Defendants.

[Doc. 125 at ¶ 7] (emphasis added).

While the Plaintiff attests in her Affidavit to having no funds with which to pay the Defendants' costs or the costs incurred by her own attorneys, upon

6

questioning at the February 25, 2022 hearing, Plaintiff's counsel acknowledged that the Plaintiff received a substantial payment from Mr. Campbell in January of 2019 as settlement in the companion case. [See Docs. 144, 145]. Plaintiff's counsel further explained that half of these settlement funds were used to pay the Plaintiff's attorneys,[1] some of whom represented the Plaintiff both in this case and in that companion case.

These settlement proceeds and the payment of the Plaintiff's attorneys are of particular relevance to the analysis of the Plaintiff's ability to pay. Not only did these two cases arise from the same incident, but they were also consolidated for discovery. These cases were prosecuted in tandem until the Campbell case settled shortly before both were scheduled for trial. Therefore, the proceeds paid to the Plaintiff were funds that were, at one time, available for the Plaintiff to meet any obligations related to this litigation. In fact, it is conceded that she paid half of these proceeds to her attorneys for costs just likes the ones at issue here.[2] Therefore, when the Plaintiff

---

[1] Plaintiff's counsel also explained that the remaining settlement funds were deposited into the Plaintiff's bank account and have since been spent by the Plaintiff. [See Doc. 144].

[2] The Court offers no opinion as to whether the payment to the Plaintiff's attorneys for such costs constitutes any sort of constructive or resulting trust for the benefit of the Defendants regarding the reimbursement for exactly the same sort of costs.

submitted a sworn affidavit to this Court that she "had . . . no money to pay my lawyers the costs and expenses they incurred on my behalf," she was less than fully candid with the Court.[3]

The record in this case presents very unusual circumstances regarding the Plaintiff's ability to pay costs and her responsibility for such costs. In some ways, this case took on an appearance more closely akin to a multi-defendant products liability case in which a plaintiff receives settlement proceeds from some defendants and is then unsuccessful at trial against the remaining defendant(s). This is a situation with which the Court is not unfamiliar. In such circumstances, a plaintiff who receives settlement proceeds from the culpable defendants has the ability to stand for the costs of those defendant(s) who successfully defended, even where the plaintiff is otherwise of limited financial means. This factor alone would be sufficient to sustain the presumption that the Plaintiff should be responsible for the costs of the Defendants in this case.

---

[3] It is obvious to the Court that the Plaintiff's attorneys prepared the affidavit for the Plaintiff's signature. It was prepared and signed only a few months after receiving the Campbell settlement, making the apparent discrepancy more difficult to explain. At the February 25, 2022 hearing, the Plaintiff's counsel simply stated that they were reimbursed for costs "in the other case." [Doc. 147 at 21]. Of course, in light of the consolidation of the cases for discovery, and the large portion of costs arising from that discovery, the credibility of the Plaintiff's affidavit is further undermined by counsel's statement.

However, the Plaintiff's receipt of a substantial sum in the Campbell settlement also does not fully explain the Plaintiff's financial arrangement with Plaintiff's counsel. The Plaintiff was represented by six attorneys in this matter, all of whom were from outside of this district, and one of whom was from out of state. Four of these attorneys were present for the entire trial. The Plaintiff had the sort of representation not ordinarily available to litigants in her position. In the Court's experience, there are only a few scenarios where multiple, out-of-town attorneys would be willing to become involved in representing a plaintiff who, by all accounts, is indigent and therefore cannot pay the costs of the litigation herself. One such scenario would be where there is a potential for a substantial recovery such that the attorneys would agree to prosecute the case on a contingency basis. Another scenario might be where the case involves an unusual subject matter or presents a potential for notoriety or media attention such that the attorneys view it as worth their time to serve as counsel *pro bono.* Another scenario might be where the plaintiff is a member of an organization that promotes a particular cause, such as racial equality or disability rights, and both the individual and the organization become parties to the action. This case, however, did not involve any of these scenarios. While this case arose from events that occurred during a contentious presidential campaign, it involved relatively

9

straightforward claims of defamation brought by a private individual—hardly the type of case that would likely result in a substantial verdict or would garner significant media attention for the attorneys. Thus, the involvement of so many geographically diverse attorneys is a matter that is puzzling to the Court.

This unusual situation prompted the Court to question the Plaintiff's financial arrangement with her counsel during the February 25th hearing. In response, Mr. Sasser explained that the Plaintiff's counsel first appeared in the Campbell case to represent her on a *pro bono* basis, with the understanding that if she prevailed on her counterclaim in the Campbell case (or prevailed in her subsequent action against Mr. O'Keefe and Project Veritas), the attorneys would recover a contingency fee.[4]

---

[4] The full exchange between the Court and Mr. Sasser went as follows:

> THE COURT: Okay. There's one other aspect of this that was raised in the response to the objection by the defendants on which I haven't heard anything. I haven't asked anything about it yet, and it falls within that broad category of, if things don't look right, you need to ask questions.
>
>          *      *      *
>
> And there is -- there's something that doesn't meet the eye test, and that is how do you staff a trial with four out-of-state -- or out-of-town attorneys, big-law-firm attorneys of this nature -- I mean, this wasn't some multi-million dollar personal injury suit. How do you do that and then turn around and come back and say, well, the plaintiff is indigent?
>
> I don't know what you -- I'm not asking you to present anything. I don't know that there's anything for you to present. I'm just saying that, looking at it from

10

Mr. Sasser did not explain, however, why six out-of-town attorneys would agree to take Ms. Teter's case on a "primarily pro bono" basis. Moreover, Mr. Sasser did not explain why once the Campbell matter was settled that these attorneys continued to represent the Plaintiff on a contingent fee basis. After all, the Plaintiff's claim was so weak that it did not survive a motion to dismiss at the close of the evidence. Further, Mr. Sasser only raised more questions by his unsolicited statement specifically disclaiming that the lawsuit was being funded by the Clinton campaign or the Democratic Party. That was not the question that the Court asked; however, Mr. Sasser's rush to assure the Court that *certain* political organizations are

---

as objective an outside eye as possible, that just kind of looks funny. Do you want to say anything about that, Mr. Sasser?

MR. SASSER: Yes, your Honor. Miss Teter's first experience with this Court was as a defendant. She got sued in the Campbell case. She didn't bring the Campbell case. We were brought in as pro bono counsel to defend her. And then -- so, if she had a counterclaim, we said that, if we recover anything, we'd like to do that on a contingent basis.

But, no, we're here primarily pro bono. But if there was an opportunity to recover something, that would help to pay the expenses. It would pay the expenses and maybe even pay the lawyers a little bit, but obviously that didn't happen in either case. But, no, we're not paid by the Hillary Clinton campaign or by the Democratic party or anything like that. We -- we came in here first as pro bono and then as contingency.

[Doc. 147 at 36-37].

not involved begs the question of whether some *other* organization was involved.

The Plaintiff's presentation on this point was extremely ambiguous and counsel frankly raised more questions than they answered during the course of the hearing. Given the discrepancies in the Plaintiff's evidence regarding her financial situation and the still unresolved questions regarding the financial arrangement between the Plaintiff and her counsel, the Court cannot find that the Plaintiff has met her burden of showing that she does not (and did not) have the resources to be responsible for the costs of this action.

The Plaintiff also puts forward additional arguments regarding the Defendants' recovery of costs. Among the factors that the Court may consider in deciding whether to deny an award of costs are: (1) "the excessiveness of the costs in a particular case"; (2) "the limited value of the prevailing party's victory"; or (3) "the closeness and difficulty of the issues decided." Ellis, 434 F. App'x at 235 (citations and internal quotations omitted).

The Plaintiff argues that the costs sought by the Defendants are excessive and that many of the items in the Revised Bill of Costs are unrecoverable under Fourth Circuit law and this Court's Local Civil Rules.

12

[Doc. 126 at 5-9; Doc. 129].  However, upon review of the Revised Bill of Costs, the Court finds that most of the Defendants' costs are not excessive, and the Court is more than capable of disallowing the specific costs that fall outside the scope of recoverable costs without denying the Defendants' Revised Bill of Costs in its entirety.  See N.O. by Orwig v. About Women Ob/Gyn, P.C., 440 F. Supp. 3d 565, 568 (E.D. Va. 2020) (denying defendants' bill of costs in its entirety where over half of the defendants' costs were excessive or unrecoverable).  Thus, this factor does not support denying the Defendants' costs in their entirety.

The Plaintiff further contends that the issues in this case were close and difficult, thereby justifying the denial of costs.  Even if Plaintiff were correct on this point, that alone is insufficient in this case to overcome the presumption of awarding costs.  See White v. White, 893 F. Supp. 2d 755, 759 (E.D. Va. 2012) (awarding costs to the prevailing party where "the only factor that weighs against awarding costs is the closeness of the issues decided [and] all other factors weigh in favor of awarding costs").

For all these reasons, the Court finds that awarding costs to the Defendants is appropriate in this case.  The expenses that may be taxed as costs under Rule 54(d)(1) are set forth in 28 U.S.C. § 1920 as follows:

> (1)  Fees of the clerk and marshal;

(2) Fees for printed or electronically recorded transcripts necessarily obtained for use in the case;

(3) Fees and disbursements for printing and witnesses;

(4) Fees for exemplification and the costs of making copies of any materials where the copies are necessarily obtained for use in the case;

(5) Docket fees under section 1923 of this title;

(6) Compensation of court appointed experts, compensation of interpreters, and salaries, fees, expenses, and costs of special interpretation services under section 1828 of this title.

28 U.S.C. § 1920.

In awarding costs pursuant to section 1920, the Court is further guided by Local Civil Rule 54.1, which sets forth certain categories of costs that may or may not be awarded to a prevailing party. This Rule states, in pertinent part, as follows:

**(f) Taxable Costs.** Items normally taxed include:

(1) Those items specifically listed on the bill of costs form. The costs incident to the taking of depositions (when allowable as necessarily obtained for use in the litigation) normally include only the reporter's attendance fee and charge for the original transcript of the deposition;

(2) Premiums on required bonds or other securities;

14

(3)    Actual mileage, subsistence, and attendance allowances for necessary witnesses at actual cost, but not to exceed the applicable statutory rates, whether they reside in or out of this district;

(4)    One copy of the trial transcript for each party represented by separate counsel;

(5)    Costs associated with private process servers;

(6)    Fees for service of summons, subpoena, and notices by private firms; and

(7)    Costs of the original videotape of a deposition and the appearance fee of a videographer in lieu of the costs of a transcript of the deposition.

**(g) Non-Taxable Costs.** Items normally not taxed include:

(1)    Multiple copies of depositions;

(2)    [D]aily, expedited, real time, or hourly copies of transcripts, unless prior Court approval has been obtained;

(3)    Attorney fees and attorney travel expenses;

(4)    Costs of shipping/mailing transcripts;

(5)    Costs for computer-aided legal research including paralegal charges and computerized indices or optical discs produced for counsel's benefit;

(6)    Costs associated with mediation;

(7)    Copy costs for any documents filed or served in electronic format;

15

(8)     Pro hac vice fees;

(9)     Costs for extraction and/or electronic configuration of data (e-mails) for the convenience of counsel absent any agreement among the parties pertaining to these costs;

(10)   Costs associated with condensing a transcript, putting transcripts on a diskette, or providing E-transcripts in addition to counsel receiving the original transcript;

(11)   Expert or witness hourly or appearance or consultation fees for attending a deposition, hearing, or trial other than that authorized by statute or Court order;

(12)   Travel time for expert or witnesses other than that authorized by statute or Court order;

(13)   Costs associated with videoconferences of meetings, conferences, or depositions other than the direct cost of the original videotape/electronic record of a deposition and the appearance fee of a videographer in lieu of the costs of a transcript of the deposition; and

(14)   Fees associated with researching potential jurors.

LCvR 54.1.

The Plaintiff has raised numerous Objections to specific items in the Defendants' Revised Bill of Costs. [Docs. 124; 126; 129]. At the February 25, 2022 hearing before the Court, the Plaintiff withdrew all but three categories of her Objections. The Plaintiff still objects to costs for expedited

16

transcripts, costs for video depositions in addition to stenographic transcripts, and costs for synchronizing deposition videos and transcripts. [Doc. 147 at 19].

Local Civil Rule 54.1(g)(2) provides that "daily, expedited, real time, or hourly copies of transcripts" are not taxable "unless prior Court approval has been obtained." LCvR 54.1(g)(2). In their Revised Bill of Costs, the Defendants have removed the expediting fee for the video deposition of Mr. Meade and for the transcript of the final pretrial conference as well as the daily rate upcharge for transcripts of the summary judgment hearing, the Rule 50 argument, and the Rule 50 ruling. [Doc. 127 at 18; Doc. 128 at 5-7]. The Defendants are still, however, requesting expediting fees for the deposition transcript of Ms. Martinson ($169.60) and the deposition transcript of Ms. Comerford's second deposition ($681.10). [Doc. 128 at 5-6; Doc. 123 at 21, 42]. The Defendants did not obtain prior approval from the Court to tax these expediting fees, and, therefore, the Court will disallow expediting fees for the transcripts of Ms. Martinson's deposition and Ms. Comerford's second deposition.

Local Civil Rule 54.1(g)(13) provides that "[c]osts associated with videoconferences of . . . depositions other than the direct cost of the original videotape/electronic record of a deposition and the appearance fee of a

videographer in lieu of the costs of a transcript of the deposition" are not taxable.  LCvR 54.1(g)(13).  The Fourth Circuit has held that a party is not entitled to recover the costs associated with both transcribing and videotaping a deposition, unless the party can demonstrate "that both costs were 'necessarily obtained for use in the case.'"  Cherry, 186 F.3d at 449 (quoting 28 U.S.C. § 1920(2)).  "The concept of necessity for use in the case connotes something more than mere convenience or duplication to ensure alternative methods for presenting materials at trial."  Id.

The Defendants seek costs for both deposition video and transcripts of Mr. Foval's *de bene esse* deposition, Ms. Martinson's *de bene esse* deposition, Ms. Comerford's second deposition, and Mr. Meade's deposition. [Doc. 129 at 6].  The Defendants argue that they are entitled to both transcript costs and costs ancillary to videotaping these depositions because the Court's Pretrial Order and Case Management Plan and Supplemental Pretrial Order and Case Management Plan required the Defendants to obtain both video and text transcripts for use in the case.  [Doc. 127 at 8-9].

The Pretrial Order and Case Management Plan required only that the parties exchange page and line designations for depositions intended to be used at trial, and it further instructed that depositions taken to preserve the testimony of certain unavailable witnesses for trial "should be presented at

18

trial by video recording *whenever possible*." [Doc. 30 at 2-4] (emphasis added). The Supplemental Pretrial Order and Case Management Plan also instructed that "[w]hile the parties may present deposition or trial testimony by reading such testimony into the record, the use of video recording is *strongly encouraged*." [Doc. 68 at 3] (emphasis added). Nothing in the Pretrial Order and Case Management Plan or the Supplemental Pretrial Order and Case Management Plan *required* the Defendants to obtain both video and text transcripts. While the videotaped depositions may have been helpful to counsel in the preparation and presentation of this case, the Defendants have proffered no other reason for why both deposition transcripts *and* videos were necessary for Mr. Foval's *de bene esse* deposition, Ms. Martinson's *de bene esse* deposition, or Ms. Comerford's second deposition. Accordingly, the Court will disallow costs related to videotaping Mr. Foval's deposition ($732.50), Ms. Martinson's deposition ($1,443.35), and Ms. Comerford's second deposition ($1,170.10). [Doc. 128 at 6; Doc. 123 at 39-40, 42].

The Court will, however, allow both original transcript and video costs for the deposition of Mr. Meade. The Defendants have demonstrated that both the transcript and the video of Mr. Meade's deposition were "necessarily obtained for use in the case" because "[a]t several points during his

19

deposition, Meade physically demonstrated the parties' movements . . . and answered questions by pointing to visual exhibits of the scene . . . which were not captured by the written transcript."  [Doc. 127 at 10; Doc. 127-2].

In addition to limiting costs associated with videotaping depositions under Rule 54.1(g)(13), the Local Civil Rules also provide that "[c]osts associated with condensing a transcript, putting transcripts on a diskette, or providing E-transcripts in addition to counsel receiving the original transcript" are untaxable.   LCvR 54.1(g)(10).   The Defendants seek costs for synchronizing the deposition video and transcript of Ms. Comerford's second deposition ($780) and for obtaining DVDs of synchronized deposition video and transcripts of Mr. O'Keefe's deposition ($595), Ms. Campbell's deposition ($127.50), Mr. Campbell's deposition ($297.50), Mr. Hartsock's deposition ($510), and Mr. Verney's deposition ($637.50).  [Doc. 128 at 6; Doc. 123 at 42, 44].  For each of these witnesses, the Defendants are also seeking costs for obtaining original deposition transcripts.  [Doc. 128 at 5-6]. The Defendants argue that they are entitled to synchronization costs in addition to costs for the original deposition transcripts "because synchronizing facilitates the process of cutting video clips using the page and line designations the parties were required to use to identify deposition testimony for use at trial," and it "increases the efficiency of video cross

20

examination." [Doc. 127 at 17]. Although the Defendants make a persuasive argument for why synchronizing deposition video and transcripts aided counsel in the preparation and presentation of this case, Defendants have failed to show why synchronization was *necessary*. Therefore, the Court will disallow synchronization costs under Local Civil Rules 54.1(g)(10) and 54.1(g)(13).

The Defendants also seek costs for a word index for Ms. Comerford's second deposition ($79).[5] [Doc. 128 at 6; Doc. 123 at 42]. Generally, "fees associated with condensed versions of the transcripts, indices, ASCII discs, and e-transcripts are not taxable." Parish v. Siemens Med. Sols. USA, Inc., No. 5:08-cv-622-BR, 2011 WL 1098966, at *2 (E.D.N.C. Mar. 15, 2011). Moreover, this Court's Local Civil Rules do not list word indices as taxable costs. See LCvR 54(1)(f). Thus, the Court will disallow costs for a word index for Ms. Comerford's second deposition.

The following claimed costs appear to be recoverable under § 1920 and Local Civil Rule 54.1. Having addressed the Plaintiff's specific Objections to the Revised Bill of Costs, the following will be allowed:

Witness fees                                                      $553.99

---

[5] The Defendants have, however, removed costs for a word index for Ms. Comerford's first deposition from their Revised Bill of Costs. [Doc. 127 at 17].

| | |
|---|---|
| Fees for service of subpoenas | $924.86 |
| Docket fees | $57.50 |
| Carol Martinson deposition transcript | $562.41 |
| Ruth Smith deposition transcript | $411.75 |
| Rayleon Ward deposition transcript | $101.25 |
| Gregory Meade deposition transcript | $165.75 |
| Joshua Kingry deposition transcript | $192.00 |
| Emily Bidwell deposition transcript | $131.55 |
| Maxine Campbell deposition transcript | $276.35 |
| Leslie Boyd deposition transcript | $504.54 |
| Richard Campbell deposition transcript | $600.95 |
| Alan Bernard & David Greenson deposition transcripts | $1,026.00 |
| Christian Lee Hartsock deposition transcript | $920.50 |
| Russel Verney & Robert Halderman deposition transcripts | $1,060.75 |
| Michael Orozco deposition transcript | $253.20 |
| Sue Huelbig Valdez deposition transcript | $135.30 |
| James O'Keefe deposition transcript | $915.90 |
| Joanne Comerford deposition I transcript | $2,008.61 |
| Kenneth Moore deposition transcript | $369.60 |
| Shirley Teter deposition transcript | $605.85 |

Case 1:17-cv-00256-MR   Document 150   Filed 03/31/22   Page 22 of 24

| | |
|---|---|
| Scott Foval deposition transcript | $1,824.11 |
| Joanne Comerford deposition II transcript | $1,181.60 |
| Gregory Meade deposition video | $105.00 |
| Rule 50 argument transcript | $226.30 |
| Rule 50 ruling transcript | $73.00 |
| Final pretrial conference transcript | $137.70 |
| Summary judgment hearing transcript | $394.20 |
| Hotel conference room for Comerford II deposition | $200.00 |
| **TOTAL COSTS** | **$15,920.52** |

Because the Defendants seek costs for some items that clearly fall outside the scope of recoverable costs, as shown by Local Civil Rule 54.1(g), the Revised Bill of Costs, which requests a sum of $23,143.67, will be reduced by a total of $7,223.15 to $15,920.52.

## ORDER

**IT IS, THEREFORE, ORDERED** that the Defendants' Motion to Review Clerk's Order Denying Costs [Doc. 131] is **GRANTED IN PART,** the Clerk's Order Regarding Taxation of Costs [Doc. 130] is **VACATED,** and the Clerk of this Court is instructed to assess costs against the Plaintiff and in favor of the Defendants Project Veritas Action Fund, Project Veritas, and James E. O'Keefe, III, in the amount of Fifteen Thousand, Nine Hundred and Twenty Dollars and Fifty-Two Cents ($15,920.52).

**IT IS SO ORDERED.**

Signed: March 31, 2022

Martin Reidinger
Chief United States District Judge